UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

STEPHEN PORTER and
TISCHE LYNAE PORTER,

    Debtors.

Case no. 19-10544-tr7

FINANCIAL SECURITY CREDIT UNION,

    Plaintiff,

v.

STEPHEN PORTER and
TISCHE LYNAE PORTER,

    Defendants.

Adv. Pro. no. 19-1052-t

## **OPINION**

Before the Court is the plaintiff credit union's motion for summary judgment that its loans to Ms. Porter are secured by a 2016 Toyota 4Runner, that a proper payoff tender for the loans was never made, that defendants cannot "lien strip," and for related relief. Defendants oppose the motion and primarily seek a ruling that the 4Runner is collateral only for the original purchase money loan. The Court concludes that the credit union is entitled to summary judgment that its loans are all secured by the 4Runner and that the tendered payoff amount was inadequate. The credit union's other requested relief must be denied.

## I. FACTS

The following facts are not in dispute:[1]

On or about March 2, 2016, Ms. Porter (fka Tische Bierle) and Joslyne M. Longoria borrowed $24,827.43 from the credit union so they could buy the 4Runner.[2] Ms. Porter and Ms. Longoria signed the credit union's standard loan and security documents, under which they, inter alia, granted the credit union a security interest in the 4Runner.

On March 9, 2016, the New Mexico Motor Vehicle Division ("MVD") issued a certificate of title for the 4Runner. It showed that the owners were "Joslyne M. Longoria or Tische Bierle" and that the first lienholder was the credit union.

On May 6, 2016, Ms. Porter took out a second loan from the credit union, this time without Ms. Longoria as a co-borrower. The loan amount was $21,000.

Ms. Porter took out a third loan, again by herself, on June 23, 2016. The loan amount was $4,872.93.

The loan documents for the loans have different loan amounts, interest rates, repayment terms, and collateral descriptions, but otherwise are identical. In particular, they all have the following terms:

> Truth in Lending Disclosure; Security: Collateral securing other loans with the credit union may also secure this loan. You are giving a security interest in your shares and dividends and, if any, your deposits and interest in the credit union; and the property described below[.]

> Signatures; By signing as Borrower, you agree to the terms of the Loan Agreement. If property is described in the "Security" section of the Truth in

---

[1] In addition to the facts derived from the pleadings regarding summary judgment, the Court took judicial notice of the docket in the main case and the associated adversary proceeding. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may sua sponte take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same).
[2] 2016 Toyota 4Runner SR5; VIN JTEBU5JR8G5312177.

Lending Disclosure, you also agree to the terms of the Security Agreement. If you sign as "Owner of Property" you agree only to the terms of the Security Agreement. Caution: it is important that you thoroughly read the agreement before you sign it.

       Loan Agreement; 4. Security for Loan – This Agreement is secured by all property described in the "Security" section of the Truth in Lending Disclosure. Property securing other loans you have with us also secures this loan, unless the property is a dwelling.

       Security Agreement; 2. What the Security Interest Covers/Cross Collateral Provisions – The security interest secures the Loan and any extensions, renewals or refinancing of the Loan. If the Property is not a dwelling, the security interest also secures any other loans, including any credit card loan, you have now or receive in the future from us and any other amounts you owe us for any reason now or in the future, except any loan secured by your principal residence.

For the first loan, the 4Runner was described in detail as the collateral. The other two loans had no similar description.

Defendants filed this bankruptcy case on March 14, 2019. On their schedule A/B they listed the 4Runner as owned by them, with a value of $14,000. On schedule D Defendants listed the credit union's $14,747 claim as secured by a lien on the 4Runner. Defendants also scheduled the credit union has having three general unsecured claims, for $19,688, $2,001, and $15,866.

In their Statement of Intention Defendants said they wished to "Retain & Pay" the 4Runner. They did not surrender, redeem, or reaffirm. The case was a "no asset" case. Defendants received their discharge on July 8, 2019. The case was closed the same day.

The credit union filed this adversary proceeding on June 17, 2019. In the complaint the credit union asked the Court to:

- Determine that all three loans to Ms. Porter are secured by the 4Runner;
- Determine that the loans are not subject to discharge as unsecured claims; and
- Determine that the loans are not subject to "strip-down."

On or about September 13, 2019, before Defendants had answered the complaint, Ms. Longoria took the 4Runner to Carlsbad Ford Lincoln and attempted to trade it in on a 2019 Ford

-3-

F-250 pickup truck. The purchase price was $90,612.60. The dealership called a credit bureau, which informed the dealership that the payoff was $11,989. When the dealership sent the credit union that amount, however, the tender was rejected. The credit union told the dealership that the payoff was $29,609.23.

Defendants answered the complaint on November 21, 2019. They admitted that all three loans to Ms. Porter were secured by the 4Runner. Defendants asserted that they tendered a payoff for the "loan(s)" on or about September 16, 2019, but admitted that they did not know whether the credit union accepted the tender.

The credit union moved for summary judgment on January 14, 2020. Defendants timely responded, asserting their payoff theory and purporting to take back their admission about cross-collateralization.

## II. DISCUSSION

A. Summary Judgment Standards.

"Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *In re Giron*, 610 B.R. 670, 673–74 (Bankr. D.N.M. 2019) (citing Fed. R. Civ. P. 56 and Fed. R. Bankr. P. 7056). "The admissions in a party's answer to a complaint are binding for purposes of determining whether the movant has made such a showing." *Doe v. City of Albuquerque*, 2010 WL 11505938, at *2 (D.N.M.) (citing *Missouri Housing Dev. Comm'n v. Brice*, 919 F.2d 1306, 1314–15 (8th Cir. 1990); *Cf. Underberg v. U.S.*, 362 F. Supp. 2d 1278, 1283 (D.N.M. 2005) (admissions in pleadings are not overcome by contradictory affidavits at summary judgment).

-4-
Case 19-01052-t    Doc 26    Filed 04/13/20    Entered 04/13/20 17:14:11 Page 4 of 10

"On summary judgment, '[a]lthough we must draw all factual inferences in favor of the nonmovant, those inferences must be reasonable.'" *Deherrera v. Decker Truck Line, Inc.*, 820 F.3d 1147, 1159 (10th Cir. 2016) (quoting *Allen v. Muskogee*, 119 F.3d 837, 846 (10th Cir.1997)).

B.  Declaratory Judgment Standards.

The federal Declaratory Judgment Act allows federal courts to enter declaratory judgments. "In a case of actual controversy within its jurisdiction, except with respect to [actions not relevant here], any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a). In the Tenth Circuit, there is an issue whether bankruptcy courts are "courts of the United States." *See Jones v. Bank of Santa Fe, (In re Courtesy Inns, Ltd.)*, 40 F.3d 1084, 1086 (10th Cir. 1994). Nevertheless, the fact that the parties consented to the jurisdiction of the Court in this proceeding means that the Court may enter a final declaratory judgment. *See, e.g., In re Dragnea*, 609 B.R. 239, 258-59 (Bankr. E.D. Cal. 2019) (in circuits that do not regard bankruptcy courts as "courts of the United States" under 28 U.S.C. § 2201, a bankruptcy judge in a declaratory judgment proceeding must make a report and recommendation to the district court unless the parties agree that the bankruptcy judge may hear and determine the proceeding).

C.  The Credit Union's Three Loans to Ms. Porter Are Secured by the 4Runner.

1.  Defendants admitted the loans are cross-collateralized. The credit union alleged in paragraphs 11, 12, 14, and 15 of its complaint that loans two and three were secured by a lien on the 4Runner. The credit union attached the loan documents for each loan to the complaint. In their answer, Defendants admitted each of these paragraphs. Defendants have not asked the Court for

permission to withdraw or amend their answer. *See Underberg*, 362 F. Supp. 2d at 1283 (admissions in pleadings established conclusively unless Court permits amendment or withdrawal). Defendants therefore admitted that the 4Runner is collateral for all three loans.

2. <u>The loan documents provide for cross-collateralization</u>. In all three loans, the security block on the Truth in Lending Disclosure; paragraph 4 of the Loan Agreement; and paragraph 2 of the Security Agreement all state that collateral securing one loan also secures other loans to the same borrower. There is no requirement that the cross collateral be separately described. Defendants' primary argument, i.e., that loans two and three are unsecured because the 4Runner was not specifically described in the documents for those loans, fails.

3. <u>Ms. Porter had the right to encumber the 4Runner</u>. While the issue was not raised by the Defendants, the Court holds that Ms. Porter had the right to encumber the 4Runner with or without Ms. Longoria's signature, consent, or knowledge. The MVD's online procedure manual[3] states: "[w]hen the owners' names on the Title are joined by the word 'or,' only one signature is required to apply for, assign or encumber the vehicle." New Mexico's Uniform Commercial Code contains an analogous provision concerning negotiable instruments:

> [i]f an instrument is payable to two or more persons alternatively, it is payable to any of them and may be negotiated, discharged, or enforced by any or all of them in possession of the instrument….

N.M.S.A. § 55-3-110(d).

Case law on the issue also indicates that Ms. Porter had the right to encumber the 4Runner. *See, e.g., Bridges v. Central Bank and Trust Co.*, 926 F.2d 971, 974 (10th Cir. 1991) ("an instrument arguably held in joint tenancy…can be effectively unilaterally pledged in full by one

---

[3] Http://www.mvd.newmexico.gov/vehicle-procedures-manual.aspx, ch 5(B)(5). This procedural provision does not appear to have an explicit statutory basis.

of the co-owners as security for a loan and later redeemed by the secured creditor in foreclosure"); *Gilles v. Norman Plumbing Supply Co. of Oklahoma City, Inc.*, 549 P.2d 1351, 1353 n. 2 (Okla. App. 1975) ("where property is owned in joint tenancy such as 'A and B' as joint tenants, a transfer by one joint tenant of his interest creates a tenancy in common between the transferee and the non-adjoining joint tenant. But where the joint tenancy ownership is 'A or B' either joint tenant can transfer the entire ownership and the transferee takes full ownership to the exclusion of the nonjoining joint tenant."); *Pope v. Fulton*, 310 P.3d 1110, 1113 (Okla. App. 2013) (applying *Gilles* to the transfer of motor vehicles).

The 4Runner was titled to Ms. Porter *or* Ms. Longoria. The either/or ownership is what allowed Ms. Longoria to trade the 4Runner in on the F-250. Defendants offered no reason, statutory or otherwise, why Ms. Porter could not further encumber the 4Runner without Ms. Longoria's consent or knowledge.

D.  Defendants' Payoff Defense Fails.

In their answer to the complaint Defendants alleged that the total balance due on the "loan(s)" was tendered to the credit union. Not so. The payoff number obtained by the dealership ($12,189)[4] was from a credit bureau, not the credit union. When the dealership tendered $12,189 to the credit union, the tender was refused. The credit union instead demanded $29,609.23, which was not paid.

E.  Defendants Did Not Attempt to "Lien Strip."

The credit union asks the Court to find that the loans are not subject to "strip down" or "strip off" based on the holdings in *Dewsnup v. Timm*, 502 U.S. 410 (1992), and *Bank of America, N.A. v. Caulkett*, 135 S. Ct. 1995 (2015). In *Dewsnup*, a chapter 7 debtor filed an adversary

---

[4] $11,989 was the quoted payoff, plus an estimated $200 for "fees."

proceeding to bifurcate an undersecured mortgage under 11 U.S.C. § 506(a) and "strip down" the unsecured portion of the claim pursuant to § 506(d). 502 U.S. at 413. In *Caulkett*, chapter 7 debtors moved to "strip off" junior liens on their houses. 135 S. Ct. at 1997. In both cases, the Supreme Court disallowed the debtors' attempts at lien stripping. *Dewsnup*, 502 U.S. at 419–20; *Caulkett*, 135 S. Ct. at 2001.

Defendants never requested such relief in this case, and lien stripping does not happen by itself. *See, e.g., In re Jones*, 152 B.R. 155, 162 (Bankr. E.D. Mich. 1993) ("the appropriate tool for seeking a determination that a lien is (or is not) void pursuant to § 506(d) is a motion to that effect under [Fed. R. Bankr. P.] 3012"); *see also* Fed. R. Bankr. P. 9013 ("A request for an order, except when an application is authorized by the rules, shall be by written motion, unless made during a hearing…."). Had Defendants asked to strip the credit union's lien before their case was closed, the Court could have ruled on the request, either following or distinguishing *Dewsnup* and *Caulkett*. As it is now too late for Defendants to seek such relief, the Court need not address the issue.

F.  The Credit Union is Not Entitled to a Declaration that it is Fully Secured.

The credit union asks the Court to declare that the 4Runner is worth at least as much as the three loans encumbering it, so the credit union is fully secured. This request must be denied.

The 4Runner is no longer property of the estate. Like the Defendants' other property, the 4Runner was abandoned to Defendants on July 8, 2019, when the discharge order and final decree were entered. *See* § 554(c). The automatic stay has been lifted. § 362(c)(1).

Furthermore, Defendants did not comply with § 521(a)(2) when they stated that they intended to "Retain & Pay" for the 4Runner. Section 521(a)(2) requires Defendants to declare whether they would surrender the 4Runner, redeem it, or seek to reaffirm the secured debts within

30 days of the petition date. Their failure to select one of the options resulted in stay relief and the abandonment of the 4Runner on or about April 13, 2019. *See* § 362(h); *In re Williamson*, 540 B.R. 460, 465 (Bankr. D.N.M. 2015) (if debtor does not comply with § 521(a)(2), § 362(h) provides that the automatic stay is modified and the subject personal property is abandoned from the estate).

Now that the case is closed and the 4Runner is abandoned, the credit union may pursue state law remedies against it. There is no need for the Court to value the 4Runner. The value will be set by the marketplace when the credit union repossess the 4Runner and sells it in a commercially reasonable manner. If the sales price is less than what the credit union is owed, however, the credit union will not be able to collect the deficiency. *See Johnson v. Home State Bank*, 501 U.S. 78, 83–84 (1991) ("[T]he [Bankruptcy] Code provides that a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy," but "a bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem.*").

In any event, because the 4Runner is no longer estate property, the Court lacks jurisdiction to value it.

### III. <u>CONCLUSION</u>

All three loans the credit union made to Ms. Porter are secured by the 4Runner. Defendants did not tender a full payoff of the credit union's loans and the partial tender was properly rejected. The discharge does not prevent the credit union from repossessing and selling the 4Runner and applying the net proceeds to the loans. For that reason, there is no need for the Court to value the 4Runner. However, any deficiency liability of Ms. Porter has been discharged. The Court will enter a separate order consistent with the foregoing and denying all other requested relief.

/s/ David T. Thuma
_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: April 13, 2020

Copies to: Counsel of record